Filed 3/14/25  Alden v. W.G. Realty II CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NICK A. ALDEN,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>W.G. REALTY II LLC et al.,<br><br>        Defendants and<br>        Respondents. | B336061<br><br>(Los Angeles County<br>Super. Ct. No. BC701333) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Nick A. Alden, in pro. per., for Plaintiff and Appellant.

Mark S. Neiswender for Defendants and Respondents W.G. Realty II LLC and Mark Joncich.

# INTRODUCTION

This is Nick Alden's sixth (at least) trip to the court of appeal (four appeals and two writ petitions) in litigation related to a Ponzi scheme masterminded by Donald Henry in the late 1980s. In 1995 Henry transferred the real property involved in the failed investment (the Ventura property) to a trust for the benefit of the duped investors.

In 1996 Alden, an attorney who briefly represented Henry, obtained a judgment against him for unpaid fees, but Henry left the country before Alden could collect. In 1999 Alden recorded a judgment lien on the Ventura property, which the trustee of the trust, W.G. Realty LLC, and certain of the trust beneficiaries were able to remove by successfully prosecuting a quiet title action and obtaining a judgment against Alden in Ventura County Superior Court (the Ventura County judgment). In 2006 Division Six of this court affirmed the quiet title judgment.

In 2018 Alden learned W.G. Realty LLC II (the current trustee) sold the last piece of the Ventura property for $1.2 million. Alden filed this action against W.G. Realty II and its managing member, Mark Joncich, seeking an accounting of the sale proceeds and asserting causes of action for conversion and breach of fiduciary duty. Essentially, Alden sought to collect his judgment against Henry from the Ventura property sale proceeds. Following a court trial, the court ruled in favor of the defendants and entered judgment in their favor.

In this appeal (Alden's third in this case) Alden challenges the judgment and the trial court's order denying his motion to vacate the Ventura County judgment as void. Alden's arguments are either barred by issue preclusion, forfeited, meritless, or a combination of the three. Therefore, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

A. *The Investors Settle Their Claims with Henry in Exchange for the Ventura Property, and Alden Gets a Judgment Against Henry for Attorneys' Fees*

The dispute underlying this action began decades ago with a fraudulent real estate scheme. In the mid-1980s Henry created a project known as Ventura 450 for the purported purpose of developing 450 acres of vacant land in Ventura County. Henry obtained over $2.5 million from investors. But the Ventura project was part of a Ponzi scheme.[1] When the project fell apart, Henry retained Alden to represent him. Henry ultimately agreed to surrender the Ventura property to avoid litigation. In February 1995 the investors recorded a deed transferring Henry's interest in the Ventura property to W.G. Realty, as trustee of the Chatsworth Investor's Trust, formed for the benefit of the Ventura project investors.

When Henry failed to pay Alden for his legal services, Alden sued him in Los Angeles Superior Court (*Alden v. Henry*, Super. Ct. L.A., No. BC116830). In 1996 the court entered a stipulated judgment requiring Henry to pay Alden $512,750. The stipulated judgment stated Alden could execute on the Ventura

---

[1] "A Ponzi scheme is a fraudulent investment scheme where 'money from the new investors is used directly to repay or pay interest to old investors, [usually] without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920's was convicted for fraudulent schemes he conducted in Boston.'" (*People v. Williams* (2004) 118 Cal.App.4th 735, 739, fn. 2.)

property.  But by that time, Henry had already transferred the property to the investors.  Henry fled the country in 1997 without satisfying Alden's stipulated judgment.  Alden recorded a judgment lien against the Ventura property in July 1999.

B.      *W.G. Realty Prevails in the Ventura Action*

In 2002 W.G. Realty and others filed a quiet title action against Alden in Ventura County Superior Court.  The plaintiffs alleged Alden's lien against the Ventura property was invalid because Henry had already transferred his interest in the property to the trust when he (purportedly) agreed in the stipulated judgment to allow Alden to execute the judgment on that property.  Alden filed a cross-complaint alleging his judgment against Henry gave him an interest in the Ventura property and the trust.

After a court trial, the court in the Ventura County case ruled in favor of the plaintiffs on their complaint for quiet title and on Alden's cross-complaint.  Division Six of this court affirmed the Ventura County judgment.  (*W.G. Realty v. Alden* (June 5, 2006, B183194 [nonpub. opn.] (*Alden I*).)  The court in *Alden I* held Alden did not have an enforceable lien on the Ventura properties because "Henry could not grant a lien on properties he no longer owned." (*Alden I*.)

4

C.    *Alden Files This Action*

   1.    *Alden Sues for an Accounting, Conversion, and Breach of Fiduciary Duty*

In early 2018 the current trustee, W.G. Realty II, sold a piece of the Ventura property for $1.2 million. In March 2018 Joncich sent a letter to the trust beneficiaries and other parties (including Alden) notifying them of the sale and the planned distribution of the proceeds. Joncich offered Alden approximately $48,000 in exchange for a release of all claims, hoping he could deter Alden from further litigation over the Ventura property. Alden declined the offer and filed this action against W.G. Realty II, Joncich, and others.[2]

In the operative first amended complaint Alden requested an accounting of the sale proceeds and asserted causes of action for conversion and breach of fiduciary duty. Alden alleged that the March 2018 letter did not provide details of a 1997 transaction involving the Ventura property and that he had not previously known about a 1999 transaction mentioned in the letter. Alden also alleged that the March 2018 letter did not provide sufficient information about the recent sale of the last parcel of the Ventura property and that the Ventura County judgment was "void, as a matter of law." Alden asked the court

---

[2]    By the time of trial, the only remaining defendants were W.G. Realty II and Joncich. Alden's claims against Joncich related solely to Joncich's actions as a managing member of W.G. Realty II.

5

to appoint an independent trustee and requested compensatory and punitive damages.[3]

> ### 2. *The Court Denies Alden's Motion To Vacate The Ventura County Judgment*

During the litigation (of this case) Alden filed a motion to vacate the Ventura County judgment under Code of Civil Procedure section 473, subdivision (d).[4]  Alden argued that the Ventura County judgment was "void *ab initio*" because the 1996 stipulated judgment against Henry conclusively determined Alden's right to encumber the Ventura property and that the court in the Ventura County Superior Court action lacked jurisdiction to modify the stipulated judgment.  Alden also argued the statute of limitations barred the Ventura action because the plaintiffs filed their complaint more than three years after Alden recorded the judgment lien on the Ventura property. And Alden argued (under the heading "The Ventura Court Ruled Against The Evidence") that, even without the 1996 stipulated judgment, he was entitled to a lien on the Ventura property based on the common fund doctrine.  Specifically, Alden argued he had represented the investors and acted for their benefit when

---

[3]     W.G. Realty II filed a motion under Code of Civil Procedure section 128.7 seeking monetary sanctions against Alden and dismissal of the original complaint.  After Alden amended his complaint, W.G. Realty II filed a second motion for sanctions, which the superior court granted.  We reversed the sanctions order in *Alden v. W.G. Realty* (July 24, 2020, B296259) (nonpub. opn.).

[4]     Undesignated statutory references are to the Code of Civil Procedure.

6

he performed legal services for Henry. Therefore, Alden argued, the trust should pay his legal fees (i.e., satisfy the 1996 stipulated judgment) from the proceeds of the sale of the Ventura property.

W.G. Realty II opposed the motion to vacate, arguing Alden's arguments had already been litigated and resolved against him in the Ventura action. Specifically, W.G. Realty II argued that the court in *Alden I* held that the Ventura County judgment did not modify the 1996 stipulated judgment and that the statute of limitations did not bar the Ventura action. Therefore, W.G. Realty II argued, Alden could not relitigate those issues to set aside the Ventura County judgment. On reply Alden argued that Henry's 1995 transfer of the Ventura property to the trust violated the Uniform Voidable Transactions Act (Civ. Code, § 3439.05) and that "res judicata and collateral estoppel" barred the Ventura action.

The trial court denied Alden's motion to vacate the Ventura County judgment. The court acknowledged that under section 473, subdivision (d), it had the authority to set aside a void judgment at any time. The court ruled, however, Alden's arguments (if valid) would only establish the Ventura County judgment was voidable—not void. The court stated a motion to set aside a voidable judgment must be presented within a reasonable time, and in no event more than two years after entry of the judgment. The court ruled Alden exceeded any reasonable time because he filed his motion to vacate more than 16 years after entry of the Ventura County judgment. The court also ruled that Alden's motion to vacate was a collateral attack on the Ventura County judgment and that Alden failed to demonstrate

7

his motion fell within the limited exceptions to the general bar against such collateral attacks.[5]

### 3. *The Trial Court Rules Against Alden, and Alden Appeals*

The court conducted a trial in May 2023. Alden represented himself.

Alden argued W.G. Realty II lacked standing to defend itself in the action due to a defect in its predecessor's (W.G Realty's) corporate status. Alden asked the court to strike W.G. Realty II's answer to the operative complaint and enter its default. Counsel for W.G. Realty II argued that W.G. Realty II had cured all prior corporate status issues and that the company changed its name from "W.G. Realty LLC" to "W.G. Realty LLC II" in 2018. Counsel also submitted evidence regarding W.G. Realty II's current corporate status. The court ruled W.G. Realty II could defend itself in this action.

Alden also argued he was entitled to a lien on the Ventura property under the common fund doctrine. Alden testified that the stipulated judgment included attorneys' fees Henry owed Alden and that Alden's work for Henry benefited the investors. Alden argued he "was hired on contingency basis by Henry. Henry held the [Ventura] property for the beneficiaries. . . . So here we stand. I recovered the property. They now sold for a million-two. And I paid them—I loaned money to the investor.

---

[5] Alden purported to appeal from the court's order denying his motion to vacate. We dismissed the appeal because an order denying a motion to vacate is appealable as an order made after a final judgment (§ 904.1, subd. (a)(2)), but the trial court (in this case) had not yet entered a final judgment.

8

I paid directly to the investor $200,000. And they're telling me no, you cannot recover that."

Alden admitted in his testimony he was not an investor in the Ventura project. Nevertheless, Alden asked the court to award him $512,750, the amount of the 1996 stipulated judgment, and $200,000, which he characterized as "a loan" to pay interest to the Ventura project investors. Regarding the loan, which he sometimes called a "deposit," Alden said he, Henry, and a third party formed HAV Enterprises in 1992. Alden stated he loaned $200,000 to HAV so that HAV could make interest payments to the Ventura project investors. Alden admitted that the loan was never documented and that he had no proof HAV made any distributions to investors.

The parties submitted written closing arguments.[6] Alden argued that the court should set aside the Ventura County judgment as void because certain trust beneficiaries lacked standing to bring the Ventura action, that the Ventura County Superior Court lacked jurisdiction or statutory authority to expunge Alden's lien on the Ventura properties, that the statute of limitations barred the Ventura action, and that the plaintiffs in the Ventura action unreasonably delayed bringing the action against Alden. Alden also asked the court to set aside the purchase of a portion of the Ventura property and reinstate Alden's lien on that portion.

Regarding the current lawsuit, Alden again argued W.G. Realty II lacked standing to defend itself. Alden also

---

[6] We augment the record to include Alden's closing brief, W.G. Realty's closing brief, and Alden's rebuttal brief. (See Cal. Rules of Court, rules 8.155(a)(1)(A), 8.410(b)(1).)

argued he had an interest in the trust and was therefore entitled to receive an accounting from the trust. Finally, Alden asked the court to award him damages of $762,000, consisting of $512,000 (roughly the amount of the 1996 stipulated judgment against Henry), $200,000 (the amount Alden testified he "gave" to HAV to pay interest to the Ventura project's investors), and $50,000 (the amount Alden said he deposited into HAV).

In its closing brief W.G. Realty II argued that most of Alden's claims in this action were collateral attacks on the Ventura County judgment and that Alden provided no legal or factual basis authorizing the trial court to set aside that judgment. W.G. Realty II also argued Alden did not introduce any admissible evidence to support his claim he invested money in, and advanced money to, HAV. Finally, W.G. Realty II argued the statute of limitations barred each of Alden's causes of action.

The court ruled in favor of W.G. Realty II on all issues. Regarding Alden's continued attacks on the Ventura County judgment, the court again ruled (as it had in denying Alden's motion to vacate) Alden had not demonstrated any legal or factual basis to set aside that judgment. Regarding Alden's causes of action for conversion and breach of fiduciary duty and his request for an accounting, the court stated in its statement of decision Alden introduced no credible evidence that he loaned HAV $200,000 or that he was an investor in the Ventura project. In fact, the court stated, Alden in his testimony denied he was an investor. The court ruled that Alden did not prove he had a fiduciary relationship with W.G. Realty II and that therefore he failed to prove necessary elements of his request for an accounting and his cause of action for breach of fiduciary duty. The court also ruled Alden did not prove W.G. Realty II converted

10

any property or funds from Alden because all of Alden's damages claims related to debts owed to Alden by Henry, not the trust. Finally, the court ruled the applicable statutes of limitations barred Alden's causes of action. The court entered judgment in favor of W.G. Realty II, and Alden timely appealed.

## DISCUSSION

A. *Issue Preclusion Barred Alden from Relitigating Issues Decided in the Ventura Action*

As W.G. Realty II correctly argues, Alden asserted in this action many of the same claims and arguments he made (and lost) in the Ventura action. Alden continued to press these arguments even after the trial ruled he could not relitigate in this case issues decided in the Ventura action, and he repeats many of these arguments on appeal. To the extent Alden's arguments relate to issues actually litigated and necessarily decided in the Ventura action, issue preclusion bars Alden from relitigating them.

"[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825; see *Estate of Flores* (2024) 98 Cal.App.5th 619, 643.) "'[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.' [Citations.] "'The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."' [Citations.] 'And the '"necessarily decided"' prong means only

11

that "the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding.'" [Citations.] 'In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.' [Citations.] [¶] . . . [¶] The party asserting issue preclusion has the burden of establishing the requirements to apply that doctrine. [Citations.] Whether to apply the doctrine of issue preclusion is a question of law that we review de novo." (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 537-538; see *Estate of Flores*, at pp. 643-644.)

There is no dispute on the first and fourth elements of issue preclusion: The Ventura County judgment is a final adjudication, and Alden was a party to the Ventura action. Regarding the second and third elements of issue preclusion, the court's opinion in *Alden I*, *supra*, B183194 demonstrates that many of the issues raised by Alden in this action were actually litigated and necessarily decided in the Ventura action.

First, Alden argues "the purchase of the 166 acres by . . . Joncich should be rescinded." Alden raised the identical issue in the fourth cause of action of his cross-complaint in the Ventura action to set aside a fraudulent conveyance. This issue was actually litigated and necessarily decided in the Ventura action, as the court explained in *Alden I*: "Alden's cross-complaint asked the court to set aside the sale of one of the Ventura 450 parcels to . . . Joncich, who formulated the plan to clear the liens from the two parcels and sell the remaining parcel (the one he did not purchase) to a third party. The court denied this claim, finding that the Chatsworth Trust beneficiaries had approved the transfer and that it was reasonably necessary to save the

12

property.  Alden presented no evidence that this transfer was fraudulent or that Joncich purchased the property for less than fair market value considering all of the liens against it. . . .  Alden did not carry his burden of proving that the sale was fraudulent or that it should be set aside." (*Alden I*, *supra*, B183194.)

Second, Alden argues a three-year statute of limitations barred the Ventura action.  Alden contends the limitations period began to run on February 25, 1997, when he recorded a notice of lis pendens against the Ventura property.[7]  The identical issue was actually litigated and necessarily decided in the Ventura action.  Under the heading "Statute of Limitations," the court in *Alden I* stated:  "This suit was timely under the three-year statute.  A judgment lien is created by recording an abstract of judgment with the county recorder.  (Code Civ. Proc., § 697.310, subd. (a).)  The stipulated judgment against Donald Henry was entered on November 25, 1996, but Alden did not record an abstract of judgment until July 22, 1999.  The current action was filed on March 5, 2002, within three years of the recordation.  The trial court properly concluded that plaintiffs' cause of action for quiet title accrued when Alden recorded the abstract of judgment that placed a cloud on the title, and that their suit was timely." (*Alden I*, *supra*, B183194.)

Third, Alden argues the plaintiffs in the Ventura action were in privity with the parties who signed the 1996 stipulated judgment.  From this premise, he argues that W.G. Realty and other plaintiffs lacked standing to bring the Ventura action, that

---

[7]     Alden also argues that Judge Kellegrew (who denied Alden's motion for summary judgment in the Ventura action) made a factual finding on this issue and that Judge Bysshe (who rendered the final judgment) improperly ignored that finding.

the Ventura County superior court "lacked jurisdiction to extinguish the lien granted to [him] by the [1996] stipulated judgment," and that "the doctrines of res judicata and collateral estoppel" barred the Ventura lawsuit. Alden raised and litigated in the Ventura action whether the Ventura plaintiffs were in privity with parties to the 1996 stipulated judgment. The *Alden I* court again: "Alden argues that the current quiet title action is an attempt to relitigate issues already resolved in his lawsuit against Henry and that it is barred by principles of res judicata and collateral estoppel. Plaintiffs were not parties to the prior lawsuit and these doctrines do not apply to their claims." (*Alden I*, *supra*, B183194.)

Fourth, Alden argues the Ventura County superior court "lacked authority or jurisdiction to modify the stipulated judgment." Alden argues "that whether or not Henry could grant [Alden] a lien on the [Ventura] Property is an issue that was decided by the Los Angeles Superior Court by the stipulated judgment, entered pursuant to the parties' settlement agreement. The Ventura Courts had no jurisdiction to review that judgment." Alden raised this issue (unsuccessfully) in his appeal from the Ventura County judgment. (See *Alden I*, *supra*, B183194 ["Alden argues that plaintiffs' action to quiet title amounts to an impermissible collateral attack on the validity of his 1996 judgment against Henry in Los Angeles County Superior Court."].) And the court in *Alden I* stated, the Ventura County superior court did not "review" or "modify" (Alden's words) the stipulated judgment. Instead, the Ventura County superior court determined Alden's lien against the Ventura property (purportedly authorized by Henry under the terms of the stipulated judgment) was invalid and unenforceable against the

14

trust and its beneficiaries, who were nonparties to the stipulated judgment. The court in *Alden I* explained: "[W]e reject the premise that this quiet title action is an improper collateral attack on the 1996 judgment. That judgment awarded Alden money damages against Henry, and the quiet title action does not challenge Henry's liability to Alden. Although the judgment in the earlier case states that Henry is authorizing Alden to execute on the Ventura 450 properties, and purports to grant a lien on those properties, Henry could not grant a lien on properties he no longer owned. The owners of those properties are entitled to seek relief from the terms of a stipulated judgment between two other parties that purports to affect their properties." (*Alden I, supra*, B183194.)

Finally, Alden argues laches barred the plaintiffs from bringing the Ventura action. This issue, too, was raised and actually litigated in the Ventura action. As the court in *Alden I* explained: "Alden contends the action for quiet title is barred by laches because the plaintiffs unreasonably delayed in bringing a challenge to his lien on the properties. [¶] . . . In its statement of decision, the court concluded that plaintiffs proceeded in a reasonably prompt manner where no lien on the property was recorded until 1999, three years after Alden obtained his judgment against Henry, and plaintiffs filed their quiet title action within three years of that recordation. This was a reasonable interpretation of the evidence which we will not disturb on appeal." (*Alden I, supra*, B183194.)

Alden attempts to relitigate each of these issues in this action as a collateral attack on the Ventura County judgment, a basis for vacating the Ventura County judgment as void, or both. He cannot do either. No matter how frustrated Alden is with the

15

result in the Ventura action, Alden cannot relitigate that case years later in this action.

B.     *The Trial Court Did Not Err in Denying Alden's Motion To Vacate the Ventura County Judgment*

Alden argues the trial court erred in denying his pretrial motion to set aside the Ventura County judgment as void.  The court, however, did not err.  The Ventura County judgment is not void on its face, and the time to file a motion to vacate the judgment on other grounds expired over a decade ago.

1.     *Applicable Law and Standard of Review*

A trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order."  (§ 473, subd. (d).)  A judgment is void if the trial court lacked jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction or lacked personal jurisdiction over the defendant.  (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 ["'an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*"]; *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 ["When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void"]; *W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 13  [same].)

"When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable."  (*People v. American Contractors*, *supra*, 33 Cal.4th at p. 661; see *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 138 ["an act in excess of jurisdiction simply renders an order or judgment voidable"]; *People v. The North River Ins. Co.* (2020)

16

48 Cal.App.5th 226, 233-234 [order setting bail was voidable, not void, where the court failed to consider the defendant's ability to pay]; *Lee v. An* (2008) 168 Cal.App.4th 558, 565-566 [terminating sanction and the resulting judgment entered without notice to the defendant were voidable, not void].) "In contrast to errors concerning a court's fundamental jurisdiction, '[e]rrors which are merely in excess of jurisdiction should be challenged directly . . . and are generally not subject to collateral attack once the judgment is final. . . .'" (*Kabran v. Sharp Memorial Hospital*, *supra*, 2 Cal.5th at pp. 339-340.) The court cannot set aside under section 473, subdivision (d), a judgment that is merely voidable. (*W. Bradley Electric, Inc. v. Mitchell Engineering*, *supra*, 100 Cal.App.5th at p. 13; see *First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 44 ["'trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void'"]; *Cruz v. Fagor American Inc.* (2007) 146 Cal.App.4th 488, 495 [same].) "When reviewing an order denying relief under section 473, subdivision (d), we consider de novo whether the judgment is void and, if it is, determine whether the trial court abused its discretion in deciding not to set it aside." (*W. Bradley Electric*, at p. 12; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020-1021.)

### 2. *The Ventura County Judgment Is Not Void on Its Face*

"Generally, defendants have six months from entry of judgment to move to vacate. [Citation.] But, if 'the judgment is void on its face, then the six month limit set by section 473 to make other motions to vacate a judgment does not apply.' [Citation.] [¶] "'A judgment or order is said to be void on its face

17

when the invalidity is apparent upon an inspection of the judgment-roll.'" [Citation.] This inquiry, however, 'does not hinge on evidence: A void judgment's invalidity appears on the *face of the record.*'" (*Braugh v. Dow* (2023) 93 Cal.App.5th 76, 86-87; see *Pittman v. Beck Park Apartments Ltd.*, *supra*, 20 Cal.App.5th at p. 1021 ["There is no time limit to attack a judgment void on its face."].)

Alden argues the Ventura County judgment is void on its face on familiar grounds: "The Ventura court had no jurisdiction to review and/or modify a stipulated judgment that was final for more than five years, barred by the res judicata doctrine, the statute of limitations [and] laches." As discussed, however, Alden unsuccessfully litigated each of these issues in the Ventura action, and issue preclusion bars him from relitigating them here.

But there's another problem. Because Alden relies on extrinsic evidence to support each of his arguments, he cannot show the Ventura County judgment is void on its face. Alden argues that the Ventura plaintiffs were in privity with parties to the 1996 stipulated judgment and that therefore (1) the Ventura County superior court lacked jurisdiction to extinguish his lien on the Ventura property and (2) the doctrine of res judicata (now claim preclusion) barred the Ventura action. Because privity concerns the relationship between parties to two different lawsuits (see *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 490), the court must consider extrinsic evidence to evaluate Alden's arguments. And Alden cites plenty of extrinsic evidence: (1) a December 1992 letter from Henry, (2) Alden's reply to the Ventura plaintiffs' response to his separate statement in support of his motion for summary judgment in the Ventura action, (3) the Ventura court's order

18

denying his motion for summary judgment, (4) testimony in the Ventura action, and (5) the 1996 stipulated judgment. Alden supports his arguments concerning laches and the statute of limitations in the same way, citing his reply to the Ventura plaintiffs' response to his separate statement in support of his motion for summary judgment in the Ventura action and a 1998 letter admitted during the Ventura trial. Alden's extensive reliance on such extrinsic evidence defeats his argument the Ventura County judgment is void on its face.

### 3. *Alden Failed To Bring His Motion To Vacate Within a Reasonable Time*

Where a judgment's invalidity does not appear on its face, a party generally has a reasonable time after learning of the judgment to seek relief under section 473, subdivision (d). (See *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19 ["a judgment or order, which is in fact void for want of jurisdiction, but the invalidity of which does not appear from the judgment-roll or record, may be set aside on motion within a reasonable time after its entry, not exceeding" two years]; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 ["A motion to vacate a judgment on the ground that it is void is timely if made within a reasonable time [citation], which has been determined to be any time within two years of the entry of the judgment."], disapproved in part in *California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 225.)[8]

---

[8] In *California Capital Ins. Co. v. Hoehn, supra,* 17 Cal.5th 207 the Supreme Court held a motion under section 473, subdivision (d), "to vacate a judgment that is void for lack of proper service is not subject to the judicially imposed two-year

19

The trial court ruled Alden's motion to vacate the Ventura County judgment, made 16 years after the judgment was entered, was not made within a reasonable time. Alden does not challenge this aspect of the court's ruling. And even if he had, the court did not abuse its discretion. Sixteen years is much longer than two years and is, under the circumstances of this case, not a reasonable length of time to wait to bring a motion to vacate.

  C. *Alden's Challenges to the Judgment Are Forfeited and Meritless*

On appeal from a judgment based on a statement of decision following a court trial, we "review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard." (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791-792; see *Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 872-873.) "We construe findings of fact liberally to support the judgment; consider the evidence in the light most favorable to the judgment; draw all reasonable inferences in support of the findings; and infer that the trial court "'impliedly made every factual finding necessary to support its decision.'"" (*Gajanan*, at p. 792; see *Rojas*, at p. 873.) We must "give deference to the factual findings made by the trial court, where there is substantial evidence supporting them." (*Greif v. Sanin* (2022) 74 Cal.App.5th 412, 442.)

---

limitation." (*Id.* at p. 225.) Alden does not argue the Ventura County judgment was void for improper service.

Alden barely discusses the trial court's statement of decision, and none of the headings in the argument section of his opening brief relates to the judgment.[9] Indeed, Alden does not challenge or even mention the court's ruling the statute of limitations bars his causes of action for breach of fiduciary duty and conversion.[10] Nevertheless, in a section titled "Whether Judge Scheper Erred In Denying Appellant's Motion To Void The Ventura County judgment," Alden takes issue with the following statements from the court's statement of decision: "The gravamen of Plaintiff's claims relate to legal work he performed for one Donald Henry in the early 1990s related to the recovery of certain real properties"; "To add to the confusion, Plaintiff offered no evidence to support his claim for damages or his claim that he loaned HAV $200,000 which was paid out to investors." Alden discusses evidence he apparently believes contradicts these two statements in the court's decision.

Assuming Alden is arguing substantial evidence did not support the judgment (an argument we would have to strain to find in his briefs), the argument fails. First, by not identifying a

---

[9] Rule 8.204(a)(1)(B) requires a brief to state each point under a separate heading or subheading summarizing the point and to support each point by argument and, if possible, citation to authority.

[10] We could affirm the judgment on this basis alone. (See *Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 611, fn. 5 ["'[w]hen a trial court states multiple grounds for its ruling,' the appellant must address each of them 'because "one good reason is sufficient to sustain the order from which the appeal was taken"'"]; *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237 [same].)

cause of action, citing any legal authority concerning his causes of action, or providing any relevant legal or factual discussion, Alden has forfeited any argument substantial evidence did not support the trial court's findings. (See, e.g., *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 ["'a party's failure to perform its duty to provide argument, citations to the record, and legal authority in support of a contention'" forfeits the issue]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 [appellant must support issues raised with "reasoned argument and citations to authority"].)

Second, Alden relies on evidence not admitted at the trial; namely, plaintiff's trial exhibits C, D, F, G, H, I, K, P, and U. (See *Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 814-815 [in determining whether substantial evidence supports a verdict, a reviewing court will not consider trial exhibits identified but not received into evidence].) Alden asserts the Ventura court admitted these exhibits and relies on them as if the court admitted them in this case. The trial court, however, excluded the exhibits, and Alden does not argue the trial court erred in excluding them. (See *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1105 ["excluded evidence, though part of the 'record on appeal' [citation] may not be used by this court to reverse the order of the trial court"]; *Clemente v. Amundson* (1998) 60 Cal.App.4th 1094, 1099, fn. 6 [appellant may not rely on evidence outside the record].)

Finally, substantial evidence supported the court's finding Alden did not loan HAV $200,000 for the investors. Alden admitted that there was no documentation evidencing the loan

22

and that he had no proof HAV ever made any distributions to investors.

D.   *Alden Forfeited Other Arguments by Failing To Raise Them in the Trial Court*

A party generally forfeits an issue on appeal by failing to raise it in the trial court.  (See *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065 ["Having failed to raise or develop this issue in the trial court, plaintiffs cannot raise the issue for the first time on appeal."]; *Howitson v. Evans Hotels, LLC*, *supra*, 81 Cal.App.5th at p. 489 ["the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"]; *In re Stier* (2007) 152 Cal.App.4th 63, 74 ["'forfeiture' is . . . the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court"].)  The purpose of the forfeiture rule is to encourage parties to bring errors to the trial court's attention so they may be corrected.  (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264; see *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1065.)  Otherwise, it "is unfair to the trial judge and the adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the attention of the trial court in the first instance."  (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912.)

Alden argues the Ventura County judgment entered in 2005 is void because W.G. Realty "forfeited its rights and privileges in 2004, when it filed its last statement of information."  Alden did not raise this issue in his motion to

23

vacate the Ventura County judgment or at trial. (Alden challenged W.G. Realty II's ability to defend itself in *this* lawsuit, not W.G. Realty's status in the Ventura action.) Alden therefore forfeited the argument. In any event, the trial court impliedly rejected Alden's assertion "W.G. Realty forfeited its rights in 2004" when the court ruled W.G. Realty II could defend itself at trial. Regarding W.G. Realty II's standing to defend this action, the court stated W.G. Realty was incorporated in Delaware in 1993. That entity first registered to do business in California in 2002, but later had its status suspended for failure to pay taxes. In 2017 Joncich wanted to revive W.G. Realty's status in Delaware and discovered the name "W.G. Realty" had been used by someone else. Joncich changed the company's name to W.G. Realty II and registered W.G. Realty II to do business in California. The court ruled that as of May 2023 W.G. Realty II was in good standing in California and could defend itself in this action. Substantial evidence, namely Joncich's testimony and the evidence cited in W.G. Realty II's brief regarding its corporate status, supported the court's ruling.

Alden also argues Henry's 1995 transfer of the Ventura property to the trust violated the Uniform Voidable Transactions Act. Alden forfeited this argument too. Alden did not allege this theory in his operative first amended complaint, identify it as an issue for trial in either of his trial briefs, or include the argument in his closing briefs. Alden attempted to raise this issue in the trial court, but dropped it. During a pretrial hearing, Alden argued "Henry had the [Ventura] property transferred to the trust. The trust paid no consideration. So I'm allowed to follow

24

it, based on 3409 . . ."[11]  The court said to Alden, "You don't have a fraudulent transfer claim in your complaint here, Mr. Alden.  You can't just start asserting new claims because you don't like what I'm saying."  Alden did not pursue the issue further.

E.      *Alden Cannot Enforce the Stipulated Judgment Against W.G. Realty Under the Common Fund Doctrine*

The final section of Alden's brief is titled "Whether Appellant Is Entitled to Collect on His Los Angeles Judgment Based on the Common Fund Doctrine."  The common fund theory applies "'"when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund."'"  In that situation, "'"such plaintiff or plaintiffs may be awarded attorney's fees out of the fund."'"  (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 497.)

Alden cites *Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274 in support of his common fund argument.  There, an attorney represented a group of trust beneficiaries in protracted litigation concerning the insolvency of the trustee, the appointment of a receiver to administer the trust, and the recovery and preservation of trust assets.  At the request of the attorney, the trial court awarded attorneys' fees to be paid out of the trust's assets.  The court subsequently ordered, to the attorney's detriment, the receiver to pay the attorneys' fees after other creditors had been paid.  (*Id.* at pp. 277-279.)  The Supreme

---

[11]      We assume Alden intended to cite Civil Code section 3439  et seq., the Uniform Voidable Transactions Act.

Court held the attorney's request for payment of attorneys' fees had priority over other creditor claims against the trust's assets. (*Id*. at pp. 284-286.)

The Supreme Court recognized that, in ordering the payment of attorneys' fees from trust assets, the trial court properly applied "a long prevailing rule in equity which allows such charge [i.e., payment of attorney's fees from trust assets] as a proper means of securing contribution from those entitled to participate in the benefits of the litigation." (*Winslow v. Harold G. Ferguson Corp.*, *supra*, 25 Cal.2d at pp. 283-284.) The Supreme Court stated: "'Plaintiffs who have succeeded in protecting, preserving or increasing a fund for the benefit of themselves and others may be awarded compensation from the fund for the services of their attorneys.' This principle is derived from the equitable concept that where one of a group has borne the cost of litigation resulting in benefit to the entire group, the latter should contribute to such expenses. [Citation.] [¶] Not only is it established that the litigant is entitled to be compensated for the expense he has incurred in the prosecution of such an action, but there is created in favor of the attorney who renders the service an equitable lien against the fund so preserved." (*Id*. at p. 285.) In other words, a beneficiary of a trust (or similar common fund) doesn't get a free ride. If one beneficiary undertakes litigation that preserves trust assets, the other trust beneficiaries must contribute to the cost of the litigation, and the attorney may collect his fees, if necessary, from the common fund.

Alden argues that, like the attorney in *Winslow*, he "should be allowed to enforce his judgment against the proceeds from the sale" of the Ventura property because he represented the trust

beneficiaries when he recovered the Ventura property. Perhaps the reasoning of *Winslow* may have applied had one of the trust beneficiaries hired Alden to recover the properties in 1992. But that's not what happened. Henry (who was adverse to the trust beneficiaries) hired Alden. That is undoubtedly why Alden sued Henry (not the trust beneficiaries) to recover his unpaid attorneys' fees and why the 1996 stipulated judgment is against Henry (ditto). Moreover, according to Alden, Henry and a third party took title to the Ventura property in their names. So even under Alden's theory, the recovery of the Ventura property benefitted Henry and the third party, not any beneficiary of the trust. That Henry subsequently transferred title of the Ventura property to the trust (thereby providing the trust beneficiaries some compensation) did not mean Alden ever represented the trust beneficiaries in recovering that property.

Alden's common-fund theory suffers from still further flaws. Alden's complaint sought an accounting and damages for breach of fiduciary and conversion from W.G. Realty II. Alden did not seek to enforce the 1996 judgment against the trust or assert any cause of action that would allow him to do so. In addition, Alden obtained the stipulated judgment against Henry in 1996, and he submitted no evidence he ever renewed the judgment. (See § 683.020, subd. (a) ["judgment may not be enforced" 10 years after the date of entry].) Thus, even if Alden had a valid reason to enforce the 1996 judgment against the trust, he could not do so because the judgment has expired.

27

## DISPOSITION

The judgment is affirmed.  W.G. Realty and Joncich are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.